United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID BAIN, et al.,

Plaintiffs,

v.

UNITED HEALTHCARE INC.,

Defendant.

Case No. 15-cv-03305-EMC

**PUBLIC VERSION**

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Docket No. 28, 30

Plaintiffs David Bain, Dayna Bain, and Alaina Bain (together, "the Bains") sued United Healthcare, Inc. ("United") and the Sagent Advisors Inc. Group Health Plan (the "Plan;" collectively, "Defendants") under the Employment Retirement Income Security Act of 1974 ("ERISA"). The Bains assert Defendants wrongfully refused to reimburse medical costs incurred by Alaina Bain. The Bains seek benefits and clarification of rights as to future benefits, ¶¶ 14-21,[1] and penalties for Defendants' failure to provide documents, ¶¶ 22-24. They also ask the Court to award penalties, and for attorneys' fees and costs. *See* Docket No. 1 ("Complaint") at 5-6.

The Court gave the parties permission to file cross-motions for partial summary judgment on the standard of review. Docket No. 27. Both parties filed a partial summary judgment motion, seeking to resolve the standard of review. *See* Docket Nos. 28 ("Defendants' Motion"), 30 ("Plaintiffs' Motion"). Specifically, United argues that because the Plan has a discretionary clause, the Court may only review Oxford's decision for abuse of discretion. *See generally*, Defendants' Motion. The Bains contend that the discretionary clause is invalid under California

[1] Unless indicated otherwise, all citations to "¶" refer to the Complaint.

Insurance Code Section 10110.6, and the Court should review the decision de novo. *See generally*, Docket No. 28. The parties then submitted supplemental briefing on the issue of whether California Insurance Code Section 10110.6 applies to the Plan. *See* Docket Nos. 37, 41 ("Plaintiffs' Supplemental Brief"); 38 ("Defendants' Supplemental Brief").

## I. REQUEST FOR JUDICIAL NOTICE

Along with their Motion for Partial Summary Judgment ("Motion"), Defendants filed a Request for Judicial Notice. *See* Docket No. 29-1 ("RJN"). Defendants seek judicial notice of the fact that Sagent Advisors, Inc. was, from October 23, 2003 to October 7, 2015, incorporated in Delaware and maintained its principal place of business in New York. Defendants state they attached a copy of the Entity Information from the New York Department of State as Exhibit A. RJN at 1. They did not. However, this information is available from the New York State Department of State Division of Corporations.[2]

A court may take judicial notice of adjudicative facts "not subject to reasonable dispute," where those facts are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Ninth Circuit has explained that "[a] court may take judicial notice of 'matters of public record,'" where facts are undisputed. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see also Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 792 n.2 (N.D. Cal. 2015) (taking judicial notice of certain documents filed with a public agency, where plaintiff did not oppose notice of those documents). Here, the Bains do not dispute the accuracy of the Entity Information. Because the Entity Information is a public record and is not disputed by the Bains, the Court takes judicial notice of the fact that Sagent Advisors, Inc. was, from October 23, 2003 to October 7, 2015, incorporated in Delaware and maintained its principal place of business in New York.

Defendants also seek to introduce three exhibits in support of their Motion:

---

[2] *See* New York State Department of State Division of Corporations, Entity Information for Sagent Advisors, Inc., *available at* https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=2989655&p_corpid=2968818&p_entity_name=sagent%20advisors&p_name_type=%25&p_search_type=BEGINS&p_srch_results_page=0.

a. A Group Policy and Group Enrollment Agreement, *see* Exhibit A to the Declaration of Sekai Mbawa, Docket No. 29-2 ("Mbawa Decl."),[3] which is a compilation of the following smaller documents:

i. a letter conveying Group Enrollment Agreement, Ex. A at UHC000071;

ii. the Group Policy and Group Enrollment Agreement, *id*. at UHC000072-079;

iii. a Handbook for the Oxford Health Plan which includes a Summary of Benefits, *id*. at UHC000080-096;

iv. a Certificate of Coverage and Member Handbook, *id*. at UHC000097-238; and

v. the New York Handbook, *id*. at UHC000239-254;

b. Correspondence from United Behavioral Health to Alaina Bain regarding the determination of coverage for medical services, *see* Ex. B; and

c. Correspondence from Independent Medical Expert Consulting Services to Oxford Health Plan regarding medical services rendered to Alaina Bain, *see* Ex. C.

As discussed *infra* II.A.1 and II.B.1, Defendants have filed a motion for partial summary judgment under Federal Rule of Civil Procedure ("Rule" or "FRCP") 56. Rule 56 requires that any assertions regarding material facts be supported by materials in the record, or by declarations based on personal knowledge that "set out facts that would be admissible in evidence." *See* FRCP 56(c)(1), (4). The non-moving party may object that the proffered material is inadmissible. *Id*. at 56(c)(2). Here, the Bains have not objected to Defendants' evidence.

Though the Bains do not object, a brief analysis shows Defendants' exhibits are admissible: The exhibits are crucial to Defendants' Motion, and so appear relevant. They have been authenticated by the Mbawa Declaration. *See* Mbawa Decl. ¶¶ 5, 7, 8. All were introduced

[3] The Bains did not file any exhibits. References herein to "Exhibits" refer to documents attached to the Mbawa Declaration.

to show some fact which is contained within the document. *See* Defs.' Mot. at 3, 6.[4] Because they were introduced to prove the truth of the matter asserted, all these exhibits are hearsay. However, all are records maintained as part of regular business activity, as described by a records custodian. *See* Mbawa Decl. ¶¶ 3-4. They therefore come within the business records exception to the hearsay rule.

With their Opposition to Defendants' Motion, the Bains filed the Declaration of David Bain. *See* Docket No. 34 ("Bain Decl."). Mr. Bain speaks from personal knowledge and does not repeat any hearsay statements. *See id*. While Defendants challenge any reliance on allegations in the Complaint that the Bains were California residents, Defs.' Opp. at 1, they have not challenged the Bain Declaration which states the same facts.

Because neither party has objected to the other's evidence, and because taking notice of or admitting the evidence is proper for the other reasons stated, the Court considers all of Defendants' and the Bains' documents and declarations.

## II. PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON THE STANDARD OF REVIEW

### A. Factual Background

#### 1. Events

The parties agree that the Bains were participants and beneficiaries of the Plan. ¶ 3; Answer ¶ 3. The Plan provided health benefits "to employees and retirees of [] Sagent Advisors and their families and dependents." ¶ 6.

In 2012, Sagent Advisors was a Delaware corporation with its principal place of business in New York. *See* RJN. The Plan was administered by United through three separate divisions, one of which was Oxford Health Insurance ("Oxford"). ¶ 6; Answer ¶ 6. The Bains argue United was also the Plan's fiduciary. ¶ 6. United is a Delaware corporation with its principal place of business in Minnesota. ¶ 5; Answer ¶ 5.

The Bains represent, and Defendants do not challenge, that Alaina Bain is the daughter of

[4] Ex. A shows Sagent was based in New York and the Plan was governed by New York law; Ex. B shows instructions given to the Bains on the appeals process; Ex. C shows the Bains appealed.

David and Dayna Bain. ¶ 3. The Bains claim Alaina Bain was dependent upon her parents during 2012. *Id*. In that year, Alaina Bain's physician prescribed [redacted]. ¶ 7. Nothing in the record suggests that this treatment was related to a disability rather than to an illness. *See generally*, Compl., Pls.' Mot., Pls.' Opp.; *see also* Exs. A-C. Since the details of treatment are not relevant to the Court's decision, the Court does not include them.

United initially approved claims for reimbursement related to this treatment, but "subsequently . . . declined to fund ongoing benefits." ¶ 8; Answer ¶ 8. The Bains state that, because of this denial, David and Dayna Bain had to bear the expense of their daughter's treatment, and incurred expenses of $100,000. ¶ 9. Following the denial of benefits, the Bains say they "administratively appealed United's termination of benefits." ¶ 11; Answer ¶ 11. The Bains also state they "exhausted their administrative remedies under the Plan." ¶ 11.

The Bains believe United did not have discretionary authority to interpret or construe the Plan, and that its determination to discontinue benefits was incorrect. ¶¶ 12, 11.

2. Documents

The Group Policy and Group Enrollment Agreement between Sagent Advisors and Oxford states that the "Policy [] consists of this Group Policy and Group Enrollment Agreement, the Group Application, the individual applications of the Members, the Certificate of Coverage ["Certificate"] and Member Handbook, the Summary of Benefits and any applicable Amendments or Riders." Ex. A at UHC000072. The document goes on to state that it "will be governed by the laws of the State of New York." *Id*. at UHC000079. The Certificate similarly states that it "is governed by the laws of the State of New York," *id*. at UHC000099, and that it shall be interpreted according to the "laws of the State of New York," *id*. at UHC000131.

The Certificate also states that Oxford will only provide coverage for services that are medically necessary, and that "determinations as to Medical Necessity are made by [Oxford], and . . . are solely within [Oxford's] discretion." *Id*. at UHC000132. Where Oxford determines that services are not medically necessary, insureds "may appeal that decision to an External Appeal Agent, and independent entity certified by the State to conduct such Appeals." *Id*. at UHC000120. If Oxford's denial is overturned by the external appeals agent, the Certificate states that Oxford

United States District Court
For the Northern District of California

will cover the treatment at issue. *See* UHC000117.

B. Legal Background

In passing ERISA, Congress declared, *inter alia*, that employee benefit plans had been growing in size and importance; that they affected the "well-being and security of millions of employees and their dependents;" and that to protect employees' well-being certain disclosures should be required and safeguards put in place. 29 U.S.C. § 1001(a). Though in name ERISA deals with "retirement" plans, Congress also applied its provisions to "any plan, fund, or program" that provided "medical, surgical, or hospital care or benefits." *Id*. at §§ 1002(1) (defining "welfare benefit plan"); 1002(3) ("employee benefit plan" includes "employee welfare plan[s]"); 1003 (ERISA applies to "employee benefit plan[s]"). Therefore, both retirement and health plans are held to minimum standards of disclosure and safeguards, and subject to "standards of conduct, responsibility, and obligation for fiduciaries." *Id*. at § 1001(a)-(b).

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court addressed the standard of review that applied to decisions by plan fiduciaries. In that case, Firestone employees filed a class action to recover severance benefits, arguing Firestone had breached its fiduciary duty under ERISA. *Id*. at 106-07. The Supreme Court decided that fiduciary's decisions should be subject to de novo review, *unless* the plan at issue "gives . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan" to the administrator or fiduciary. *Id*. at 115. In those circumstances, decisions are subject to review for abuse of discretion.[5]

In 2011, California passed a bill to void discretionary clauses in certain insurance policies. The resulting code section took effect January 1, 2012. California Insurance Code Section 10110.6 ("Section 10110.6") provides that:

> (a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any

[5] The precise level of review may vary if the fiduciary is affected by a conflict of interest. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (2006) (the review should be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record.").

> California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.
>
> . . .
>
> (c) For purposes of this section, the term "discretionary authority" means a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court.
>
> . . .
>
> (g) This section is self-executing. If a life insurance or disability insurance policy, contract, certificate, or agreement contains a provision rendered void and unenforceable by this section, the parties to the policy, contract, certificate, or agreement and the courts shall treat that provision as void and unenforceable.

C. Analysis

1. Legal Standard

Defendants moved for summary judgment, arguing the Court should review Oxford's decision for abuse of discretion only. Defs.' Mot. at 6. A moving party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. Where the non-moving party has the ultimate burden of proof, the moving party may prevail on a summary judgment motion by pointing to the non-moving party's failure "to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the same time, "all reasonable inferences must be drawn in favor of the non-movant." *John v. City of El Monte*, 515 F.3d 936, 941 (9th Cir. 2008).

The Bains moved for judgment on the pleadings, or, in the alternative, for summary judgment, arguing the Court should review Oxford's decision de novo. Pl.'s Mot. at 2 (invoking

FRCP 12(c), 56). Typically, "[a]nalysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015). However, if a party presents evidence outside the pleadings and the court does not exclude that evidence, then "the motion must be treated as one for summary judgment under Rule 56." FRCP 12(d).

Here, the Bains present a declaration asserting that they are and have been California residents since at least 2000; they did not understand the legal significance of the "choice of law" provision in the Plan; and they did not intend to submit to New York law in pursuing an external appeals process. Bain Decl. ¶¶ 3-5. The Bains rely on this declaration in their Opposition to Defendants' Motion. *See* Pls.' Opp. at 2, 7, 8. When converting a Rule 12(c) motion to a summary judgment motion, the Court must give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." FRCP 12(d). Here, the Bains specifically envisioned that the Court may transform their motion into one for summary judgment, acknowledging this in their very Notice of Motion. *See* Pls.' Mot. at 2. They also submitted evidence outside the pleadings along with their motion. *See* Bain Decl. The Bains were given, and took advantage of, the opportunity to present pertinent material. Accordingly, the Bains' motion for judgment on the pleadings is converted to a Motion for Summary Judgment.

2. The Plan Confers Discretion on the Administrator

As explained, *supra* II.B., the Supreme Court has held that courts apply an abuse-of-discretion standard where plans grant discretion to a fiduciary or administrator. *See Firestone*, 489 U.S. at 115. Here, the Plan expressly conferred discretion on Oxford: "Unless otherwise indicated in this Certificate, determinations as to Medical Necessity are made by Us, and such determinations are solely within Our discretion." Ex. A at UHC000132. The Bains do not argue that the Plan fails to confer discretion. Instead, they argue that the discretionary clause is invalidated by the California Insurance Code. For the reasons discussed below, this argument fails.

3. The Plan is Governed by New York, Not California, Law

Section 10110.6 does not apply because the Plan is governed by New York law. As noted

United States District Court
For the Northern District of California

above, the Plan states that it is "governed by the laws of the State of New York." Ex. A at UHC000079, UHC000099.

Suits filed regarding "ERISA-regulated plans [are to] be treated as federal questions." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987). In federal question cases, "the court should apply federal, not forum state, choice of law rules." *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995).

Applying federal choice of law rules, the Ninth Circuit in *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126 (9th Cir. 1993), held that "as a matter of federal law," where a contract provides that a certain state's law applies, that choice of law will be upheld unless it was "unreasonable or fundamentally unfair" "when viewed from the time when the contract was made." *Id*. at 1128-29; *see also Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001) (holding that choice of law clause in ERISA contract should be followed if it is "'not unreasonable or fundamentally unfair.'") (quoting *Wang Labs.*, 990 F.2d at 1128–29); *accord Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan*, 774 F.3d 1193, 1197 (8th Cir. 2014) (quoting *Buce*, 247 F.3d at 1149).

Though the plaintiff in *Wang Laboratories* filed suit in California, "the plan contain[ed] a provision that sa[id] that Massachusetts law control[led] the parties' rights and obligations." *Id*. at 1128. The Ninth Circuit held Massachusetts's six-year statute of limitations rather than California's four-year statute applied. *Wang Labs.*, 990 F.2d at 1127-28. Because Wang and most of its employees were housed in Massachusetts, choosing Massachusetts law at the time the contract was made "was fair and reasonable." *Id*. at 1129. The parties' choice of law was reflected in "[t]he plan's administrative costs and reserve for litigation expenses," so "[t]he benefits of enforcing the contractual choice of law redound ultimately to the beneficiaries" in lower "administrative costs and reserves for litigation expenses." *Id*. Enforcing the parties' contractual choice of Massachusetts law was neither unreasonable nor fundamentally unfair. Massachusetts law thus applied, even though the plaintiff was a California resident and had been injured in California, and the action had been filed in California. *Id*. at 1127. *See also Fenberg v. Cowden Auto. Long Term Disability Plan*, 259 Fed. App'x. 958, 959 (2007) (applying Rhode

United States District Court
For the Northern District of California

Island law rather than California, though Rhode Island permits discretionary clauses, because the parties had selected Rhode Island in their contract and the "choice of Rhode Island law was both fair and reasonable").[6]

In contrast, the Ninth Circuit in *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997), held that enforcement of a choice of law clause was "fundamentally unfair." In that case, the plaintiffs' cruise tickets provided both for a specific forum and for a one-year statute of limitations on any lawsuit filed. The plaintiffs filed their case outside the contractual limitations period, and the district court dismissed on that ground. *Id*. at 1294. But because the case involved a seafaring vessel, an admiralty rule provided that when bringing suit, a plaintiff must state that the vessel at issue "'is within the district or will be during the pendency of the action.'" *Id*. at 1294-95 (quoting Admiralty Rule C(2)). In order to bring suit, then, the plaintiffs had to file *both* within one year of harm, *and* during a time period when the vessel was in the chosen forum. They argued this was "fundamentally unfair" because they did not know when the vessel would be in the chosen forum, and so "could not have filed a complaint meeting the requirements of Rule C(2) within the limitations period." *Id*. at 1295. The Ninth Circuit held that the agreed-upon limitations period, "when coupled with the verified complaint requirement of Rule C(2) and the contractual forum selection clause," was "so unfair" that the plaintiffs "should be relieved of its constraints." *Id*. at 1296.

Here, the Plan is an agreement between Sagent and Oxford. Ex. A at UHC000071-072. Oxford "was incorporated under the laws of New York." Mbawa Decl. ¶ 6. Sagent had its principal place of business in New York. RJN at 1. Oxford and Sagent were New York residents. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business"). Because both Oxford and Sagent had offices in New York and were New York residents, New

[6] Note that *Fenberg* upheld the choice of Rhode Island law through California had already announced its policy of forbidding discretionary clauses. *See id*. (discussing a 2004 policy announcement from the Insurance Commissioner); *see also Hearing on S.B. 621*, 2011-2012 Leg. Sess. (Cal. June 22, 2011), *available at* http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_0601-0650/sb_621_cfa_20110620_ 122124_ asm_comm.html (same).

York has a substantial relationship to the parties and there is a reasonable basis for New York's law to be chosen. *See Wang Labs.*, 990 F.2d at 1129. As in *Wang Laboratories*, the choice of law also allowed the Plan to lower its costs by subjecting the Plan administrator's discretion to limited judicial review. Lower litigation costs ultimately benefit ERISA beneficiaries. Thus, as in *Wang Laboratories*, the parties' choice of New York law was not unreasonable.

Nor is the choice of New York law unfair. The purpose of laws invalidating discretionary clauses is to mitigate the inherent conflict of interest present when an entity both pays for and makes decisions about a benefit plan. *See Standard Ins. Co. v. Morrison*, 584 F.3d 837, 840 (9th Cir. 2009) (upholding a regulation authorizing an agency to invalidate discretionary clauses). While New York does not invalidate discretionary clauses per se, it curtails plan providers' ability to benefit from any conflict of interest. New York "established an enrollee's right to an external appeal of a final adverse determination by a health care plan." N.Y. Pub. Health Law § 4910(1). Enrollees' appeals are randomly assigned by the New York Commissioner of Health to an external review agent. *Id*. at § 4914(1). The agent is independent: agents are not permitted to have a professional, familial, material, or any other affiliation with the health care plan. *Id*. at § 4913(1). Once an appeal is assigned to him or her, the agent "determin[es] . . . whether the health care plan acted reasonably and with sound medical judgment and in the best interest of the patient." *Id*. at § 4914(2)(d). If the agent overturns the health plan's decision, this is "binding on the plan" and the health plan must provide coverage. *Id*. at § 4914(2)(d)(A)(iv); *see also* Ex. A at UHC000121 ("If an External Appeal Agent overturns Our decision that a service is not Medically Necessary . . . We will provide coverage . . . ."). Thus, New York preserves the independence of decision-makers while affording some protection to enrollees. It was not "fundamentally unfair" to select New York law to govern.

Moreover, as noted above, the Supreme Court has held that a plan may "give[] . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan" to the administrator or fiduciary. *Firestone Tire*, 489 U.S. at 115. Absent a conflict of interest, decisions made under such ERISA plans are subject to review only for abuse of discretion. It would seem inconsistent with the Supreme Court's assumption that ERISA plans may provide for

discretionary authority to hold any such plan is fundamentally unfair.

Because the application of New York law is reasonable and fair, the choice of law provision survives here. *See Doe v. PricewaterhouseCoopers Health & Welfare Benefit Plan*, No. C 13-02710 JSW, 2014 WL 2737840, at *3 (N.D. Cal. June 11, 2014) ("[B]ecause Plaintiff . . . has not demonstrated that application of the choice of law provision would be unreasonable or fundamentally unfair, the Court will enforce all provisions of the Plan, including the Delaware choice of law provision. Therefore, the Court shall apply the abuse of discretion standard of review."). Because New York law applies, the discretionary clause is not subject to California Insurance Code § 10110.6, and thus Defendants are entitled to summary judgment.

4. Even if California Law Applied, Section 10110.6 Does Not Apply to the Bains' Claims

Even if California rather than New York law applied, Section 10110.6 does not apply to this case. Section 10110.6 is limited to life and disability insurance: the statute applies only to "polic[ies], contract[s], certificate[s], or agreement[s] . . . that provide[] or fund[] *life insurance or disability insurance* coverage for any California resident . . . ." § 10110.6(a) (emphasis added). It requires a court to treat "as void and unenforceable" any discretionary clause in "a *life insurance or disability insurance* policy." *Id*. at § 10110.6(g) (emphasis added).

When interpreting a California statute, a federal court must apply California's principles of statutory construction. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001); *accord Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 510 (9th Cir. 1990). The California Supreme Court instructs that "a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." *Dyna-Med, Inc. v. Fair Emp't & Hous. Com.*, 43 Cal. 3d 1379, 1386–87 (1987). Only if the statute is ambiguous does the court consider extrinsic evidence, such as "the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality." *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal.4th 763, 776 (1998).

Here, the statute is not ambiguous. Section 10110.6 is expressly limited to "life insurance

or disability insurance." Disability insurance is "insurance *appertaining to injury, disablement or death* resulting to the insured from accidents, *and appertaining to disablements* resulting to the insured from sickness." Cal. Ins. Code § 106(a) (emphases added). The California Supreme Court has explained that "[d]isability insurance is designed to provide a substitute for earnings when, because of bodily injury or disease, the insured is deprived of the capacity to earn his living." *Erreca v. W. States Life Ins. Co.*, 19 Cal. 2d 388, 397 (1942). "Disability" insurance is meant to insure against the loss of the ability to pursue one's occupation, or to pursue other activities. *See Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 22 (1978) (occupational and non-occupational disability insurance policies "offer protection to the insured when he is no longer able to carry out the substantial and material functions of his occupation."), *disapproved of on other grounds by Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979). Thus, disability insurance is keyed to the beneficiaries' inability to work, and benefits are designed to provide substitute income. *Cf.* Cal. Ins. Code § 10111 ("In life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto.").[7]

The distinction between health and disability insurance is underscored by the fact that California regulates insurance plans and health care service plans differently. *See Williams v. Cal. Physicians' Serv.*, 72 Cal. App. 4th 722, 729 (1999). In *Williams*, the plaintiff sued Blue Shield when it refused to pay for physical therapy. *Id.* at 725. Following her accident, "Blue Shield submitted to the Department of Corporations, for review and approval, proposed revisions to" the

[7] Cases interpreting Section 10110.6 are in accord. For example, in *Polnicky v. Liberty Life Assurance Co. of Boston*, the plaintiff sought disability benefits for his "long term disability." 999 F. Supp. 2d 1144, 1146 (N.D. Cal. 2013). The issue in that case was which version of the plan controlled, the version existing when the insurer denied the plaintiff's claim, or the version existing "when plaintiff first became disabled." *Id*. at 1148. In *Curran v. United of Omaha Life Insurance Co.*, the plaintiff similarly "became disabled" and had to stop work. 38 F. Supp. 3d 1184, 1186 (S.D. Cal. 2014). In *Abrams v. Life Insurance Co. of Northamerica*, the court noted that the plan at issue provided for specific measurable benefits to be paid each month the employee was disabled. *See* No. CV1500056BROASX, 2016 WL 3398407, at *1 (C.D. Cal. May 19, 2016). The amount of these benefits was pegged to the wages earned by the employee, and capped at "a maximum monthly benefit of $25,000" for the highest-earning employees. *Id*. These cases show that disability insurance pays a periodic sum certain to replace income when an employee is unable to work.

plan covering the plaintiff which reduced her physical therapy benefits. *Id*. at 726-727. The plaintiff claimed that her right to physical therapy services vested under the Insurance Code, "which restricts insurers' ability to reduce benefits in disability insurance policies." *Id*. at 728. The appellate court held that the plan at issue "is not an insurance policy subject to approval by the Insurance Commissioner, but a 'health care service plan' subject to approval by the Commissioner of Corporations." *Id*. at 728-29. The appellate court noted that the plan was exempt from the Insurance Code and fell within the jurisdiction of the Commissioner of Corporations. *Id*. at 731.[8]

The Bains argue that there is a latent ambiguity in the statute, because in California "health insurance is considered a type of disability insurance." Pls.' Supp. Br. at 1. In support of this argument, they cite a California code provision which directs that "'health insurance' for purposes

[8] Of the 24 cases that discuss Section 10110.6, every case involving a disability insurance policy entailed payment of a prescribed sum and/or replacement of lost income, not reimbursement for health services. *See Dao v. Liberty Life Assurance Co. of Bos.*, No. 14-CV-04749-SI, 2016 WL 3595686 (N.D. Cal. July 5, 2016) ("The second amended complaint alleges, . . . , that Liberty . . . improperly and unreasonably den[ied] plaintiff's claim for long-term disability benefits," and referring to monthly checks for the same amount each month); *Rapolla v. Waste Mgmt. Emp. Benefits Plan*, No. 13-CV-02860-JST, 2014 WL 2918863 (N.D. Cal. June 25, 2014) (same); *Abrams*, 2016 WL 3398407 (claiming for disability benefits); *Hantakas v. Metro. Life Ins. Co.*, No. 214CV00235TLNKJN, 2016 WL 374562 (E.D. Cal. Feb. 1, 2016) (same); *Lin v. Metro. Life Ins. Co.*, No. C 15-2126 SBA, 2016 WL 4373859, at *1-2 (N.D. Cal. Aug. 16, 2016) (referring to the plaintiff's inability to earn "more than 80% of [his] predisability earnings"); *Nagy v. Grp. Long Term Disability Plan for Emps. of Oracle Am., Inc.*, No. 14-CV-00038-HSG, 2016 WL 1611040 (N.D. Cal. Apr. 22, 2016) (the plaintiff stopped work and was evaluated for disabled status by the Social Security Administration); *Arko v. Hartford Life & Accident Ins. Co.*, No. 13-CV-1044 YGR, 2014 WL 5140358 (N.D. Cal. Oct. 10, 2014) (discussing plaintiff's inability to work); *Doe v. Pricewaterhouse Coopers Health & Welfare Benefit Plan*, No. C 13-02710 JSW, 2014 WL 2737840 (N.D. Cal. June 11, 2014) (same); *Polnicky*, 999 F. Supp. 2d at (same); *Jahn-Derian v. Metro. Life Ins. Co.*, No. CV 13-7221 FMO (SHX), 2016 WL 1355625 (C.D. Cal. Mar. 31, 2016) (same); *Williby v. Aetna Life Ins. Co.*, No. 214CV04203CBMMRWX, 2015 WL 5145499 (C.D. Cal. Aug. 31, 2015) (same); *Felix v. Metro. Life Ins. Co.*, No. CV 14-3971-R, 2015 WL 3866760 (C.D. Cal. June 19, 2015) (same); *Hodjati v. Aetna Life Ins. Co.*, No. CV 13-05021 SVW, 2014 WL 7466977 (C.D. Cal. Dec. 29, 2014) (same); *Snyder v. Unum Life Ins. Co. of Am.*, No. CV 13-07522 BRO RZX, 2014 WL 7734715 (C.D. Cal. Oct. 28, 2014) (same); *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan*, No. SACV 12-01905-CJC, 2014 WL 979191 (C.D. Cal. Mar. 12, 2014) (same); *Curran*, 38 F. Supp. 3d at 1185 (same); *Thomas v. Aetna Life Ins. Co.*, No. 215CV01112JAMKJN, 2016 WL 4368110 (E.D. Cal. Aug. 15, 2016) (same); *Falbo v. Bd. of Admin.*, No. E057487, 2014 WL 3816438 (Cal. Ct. App. Aug. 4, 2014) (unreported) (same); *Pfenning v. Liberty Life Assurance Co.*, No. 3:14-CV-471, 2015 WL 9460578 (S.D. Ohio Dec. 28, 2015) (same); *Hirschkron v. Principal Life Ins. Co.*, No. 15-CV-00664-JD, 2015 WL 6651146 (N.D. Cal. Oct. 29, 2015) (discussing long-term disability benefits); *Gonda v. Permanente Med. Grp., Inc.*, 10 F. Supp. 3d 1091, 1092 (N.D. Cal. 2014) (same); *Rowell v. Aviza Tech. Health & Welfare Plan*, No. C 10-5656 PSG, 2012 WL 440742 (N.D. Cal. Feb. 10, 2012) (same).

of this code shall mean an individual or group disability insurance policy that provides coverage for hospital, medical, or surgical benefits." *Id*. at 2 (quoting Cal. Ins. Code § 106(b)). But even where this code section refers to "health insurance," it says that such insurance "shall not include" "disability insurance, including hospital indemnity, accident only, and specified disease insurance . . . .credit disability . . . [and] disability income . . . ." *See id*. at § 106 (b)(2), (3), (5). Section 106 does not negate the difference between the fundamental characteristics of health versus disability insurance.

The insurance benefits sought by the Bains here are not for lost income resulting from Alaina Bain's inability to work, but for reimbursement for the cost of health care services. What they sought was health insurance, not disability insurance. The Court has combed the Bains' Complaint, as well as the medical documents submitted in United's Exhibits B and C, and has found no reference to Alaina Bain being disabled. Indeed, numerous points in the Bains' documents suggest that the Plan is a health care service plan and not a disability insurance policy. *See* Compl. ¶ 3, (the Bains were "participants and beneficiaries . . . in the Sagent Advisors Group *Health* Plan"), ¶ 6 ("the Plan provided *health* benefits"); ¶ 7 (the treatments at issue 'were *medically* necessary"); ¶ 8 (United should have sought an "independent *medical* examination" rather than relying on Alaina Bain's "*medical* . . . records"); ¶ 13 (United acknowledged receiving communication from the Bains "via its OPTUM*Health* division") (emphases added). The Bains do not claim denial of benefits under a life insurance or disability insurance policy, they claim benefits were denied under a "plan [that] provided health benefits." ¶ 6. The Complaint refers to [redacted] [redacted] ¶¶ 7-8. In their briefs, the Bains clarify they seek "reimbursement of *medical* expenses," Pls.' Mot. at 3 (emphasis added), and for United to provide "[redacted] benefits," Pls.' Opp. at 1 (emphasis added). Because the Bains do not claim under a disability or life insurance policy, Section 10110.6 does not void the discretionary clause in the Plan. Defendants are thus additionally entitled to summary judgment on this ground.

United States District Court
For the Northern District of California

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment, and **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

This order disposes of Docket Nos. 28 and 30.

**IT IS SO ORDERED**.

Dated: August 30, 2016

EDWARD M. CHEN
United States District Judge