UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BAIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>OXFORD HEALTH INSURANCE INC, et al.,<br><br>    Defendants. | Case No. 15-cv-03305-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NONTAXABLE EXPENSES**<br><br>Docket No. 116 |

    Plaintiffs are David and Dayna Bain and their daughter Alaina Bain. They filed suit against the plan administrator for their health insurance plan – *i.e.*, Oxford Health Insurance, Inc. and its affiliate United Behavioral Health (collectively, "UBH") – after UBH denied a claim submitted by the Bains for Alaina. UBH found that the services at issue were not medically necessary.

    The parties filed cross-motions for judgment. In February 2020, the Court granted in part and denied in part Plaintiffs' motion and denied UBH's motion. *See generally* Docket No. 108 (order). The Court found that UBH abused its discretion in denying the Bains' claim for benefits but did not award the Bains the full relief they sought. In particular, the Court did not award the Bains an award of benefits outright but rather remanded the case back to the plan administrator for further proceedings.

    A final judgment issued on February 14, 2020. *See* Docket No. 113 (final judgment). Now pending before the Court is the Bains' motion for attorneys' fees and nontaxable expenses. Having considered the parties' briefs and accompanying submissions, the Court hereby finds the matter suitable for resolution without oral argument. The motion for fees and nontaxable expenses

is **GRANTED**.

## I. FACTUAL & PROCEDURAL BACKGROUND

The Bains have been represented by two different law firms: the Phillips law firm and the Creitz law firm. Apparently, the Bains originally retained the Phillips law firm, and the Phillips law firm brought in the Creitz law firm as an ERISA expert. *See* Carlin Decl. ¶ 10. The two firms initially represented the Bains on an hourly basis until September 2015, when the representation was changed to a contingency payment. *See* Carlin Decl. ¶ 10.

The Bains seek a total award of $173,943.75, most of which consists of attorney/paralegal fees. Altogether, the total number of attorney/paralegal hours is just under 300.

## II. DISCUSSION

A. Legal Standard

Title 29 U.S.C. § 1132(g)(1) provides as follows: "In any action under this subchapter (other than an action described in paragraph (2) [regarding delinquent contributions]) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

The Supreme Court has held that § 1132(g)(1) does not

> require that a fee claimant be a "prevailing party" before he may seek a fees award. . . . [T]his interpretation is contrary to § 1132(g)(1)'s plain text. We hold instead that a court "in its discretion" may award fees and costs "to either party" as long as the fee claimant has achieved "some degree of success on the merits."

*Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 244 (2010); *see also id.* at 254 (discussing a partially prevailing party – *i.e.*, a party "'achieving *some success*, even if not major success'").

Notably,

> [a] claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"

*Id.*

In *Hardt* itself, the Supreme Court rejected the plan insurer's contention that "a court order

remanding an ERISA claim for further consideration can never constitute 'some success on the merits,' even if such a remand results in an award of benefits." *Id.* The Supreme Court noted that the district court had found that (1) the insurer had failed to comply with ERISA guidelines and that (2) the plaintiff did not get the kind of review to which she was entitled under the law. *See id.* The district court had also found that (3) there was compelling evidence that the plaintiff was totally disabled and further stated that (4) it was inclined to rule in her favor on benefits but declined to do so in order to first give the insurer the opportunity to address the deficiencies in its review of her claim. Finally, (5) the insurer ended up awarding benefits to the plaintiff upon remand from the district court. *See id.* at 256. Given these circumstances, the Supreme Court held that the plaintiff "has achieved far more than 'trivial success on the merits' or a 'purely procedural victory.'" *Id.* The Supreme Court added that "we need not decide today whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)." *Id.*

Although the Supreme Court did not address the issue in *Hardt*, most courts have, in the wake of *Hardt* determined that a remand to a plan administrator – by itself – does in fact constitute some success on the merits. *See, e.g.*, *Bunger v. Unum Life Ins. Co. of Am.*, 231 F. Supp. 3d 865, 868 (W.D. Wash. 2017) ("[M]any courts since I hold that a remand to a plan administrator may constitute a sufficient degree of success to warrant fees."); *Valentine v. Aetna Life Ins. Co.*, No. 14-CV-1752 (JFB)(GRB), 2016 U.S. Dist. LEXIS 117363, at *12 (E.D.N.Y. Aug. 31, 2016) ("[M]any courts have concluded that remand – including, as is the case here, because the administrator's decision was arbitrary and capricious – without more, constitutes success on the merits."). At least two circuit courts have also so held. *See Gross v. Sun Life Ass. Co.*, 763 F.3d 73, 78-79 (1st Cir. 2014) (noting that "a remand for a second look at the merits of her benefits application is often the best outcome that a claimant can reasonably hope to achieve from the courts"); *McKay v. Reliance Std. Life Ins. Co.*, 428 Fed. Appx. 537, 546-47 (6th Cir. 2011) (noting that "McKay was just like the *Hardt* claimant in that he 'persuaded the District Court to find that the plan administrator . . . failed to comply with the ERISA guidelines' and that, as a result, he 'did not get the kind of review to which [he] was entitled under the applicable law'"). This Court

3

has also so held. *See Barnes v. AT&T Pension Benefit Plan – Nonbargained Program*, 963 F. Supp. 2d 950, 962 (N.D. Cal. 2013) (noting that a procedural victory should not be equated with a substantive victory for which the remedy is procedural in nature (such as a remand); also indicating that a remand for further administrative proceedings is not a trivial success where it is based on a court determination that ERISA rights were violated); *see also Dimry v. Bert Bell*, No. 3:16-cv-01413-JD, 2018 U.S. Dist. LEXIS 215906, at *2-3 (N.D. Cal. Dec. 22, 2018) (holding that plaintiff "achieved considerable success" because "[t]he Court set aside the denial of his disability claim for abuse of discretion, which in any reckoning is a substantial and positive result[;] [t]hat the matter was remanded for further consideration is no bar to a fee award" because "the circumstances here amply establish that the remand was made to correct defendants' abuse of discretion in denying Dimry's claims, which effectively denied him the kind of fair review he was entitled to under ERISA").

B.  "Some Success on the Merits"

In its papers, UBH acknowledges that "courts that have addressed the issue have, with some exceptions, generally concluded that a remand to a plan administrator constitutes 'some success on the merits' sufficient to support a fee award under section 1132(g)." Opp'n at 4. Nevertheless, UBH emphasizes that "no court has made that a categorical rule" and contends that the specific circumstances here are unique and weigh against a conclusion that the Bains achieved some success on the merits. UBH focuses on the fact that the Bains achieved nothing more than what the *Wit* litigants did – and the Bains were already members of the *Wit* class. *See* Opp'n at 4 (arguing that "there is no case in which a plan participant obtains a remand based on the collateral estoppel effect of an order from a parallel class action in which the plan participant is a class member that obtained the same remedy for class members").

UBH's argument is not persuasive. First, UBH overstates the weight the Court put on *Wit*. The Court did not find that *Wit* had a preclusive effect with respect to liability. *See* Docket No. 108 (Order at 17). Instead, the Court only credited *Wit* with respect to the conclusion that review for abuse of discretion should be tempered by significant skepticism. *See* Docket No. 108 (Order at 108). The Court still had to evaluate whether, under that standard of review, the Bains's ERISA

4

claim for benefits had merit. Second, that the Court ultimately found that only a remand was warranted does not amount to trivial success because, at that point in time, what remedies would be issued in *Wit* had not been established. The case at bar went beyond *Wit*.

C. *Hummell* Factors

UBH argues next that, even if the Bains did achieve some success on the merits under *Hardt*, that still is not the end of the inquiry. Rather, in a post-*Hardt* case, the Ninth Circuit has directed that,

> [i]n order to grant fees under 29 U.S.C. § 1132(g)(1), courts must *first* determine whether a litigant has achieved some degree of success on the merits. If so, courts must *then* determine whether the *Hummell* factors weigh in favor of awarding that litigant attorney's fees. Only if both of these conditions are met may a district court award fees.

*Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1122 (9th Cir. 2010) (emphasis added; citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980)).[1]

The *Hummell* factors are as follows:

> "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions."

*Id.* at 1121. "No one of the *Hummell* factors . . . is necessarily decisive, and some may not be pertinent in a given case." *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984). "In cases where a participant or beneficiary has had to resort to litigation against a plan to recover wrongfully withheld benefits, [the Ninth Circuit has] stressed that . . . application of the *Hummell* factors must recognize the remedial purpose of ERISA in favor of participants and beneficiaries." *Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Local Union*

---

[1] The Supreme Court held in *Hardt* that the *Hummell* factors "bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence," and so "are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 560 U.S. at 255. But the Ninth Circuit has nevertheless endorsed application of the *Hummell* factors.

5

*No. 675 v. Foster*, 332 F.3d 1234, 1239 (9th Cir. 2003).

On factor (1), UBH may not have acted in bad faith, *see* Opp'n at 5 (noting that the independent third-party reviewer IMEDECS upheld the benefits determination), but that does not mean that it was not culpable. *See McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256-57 (3d Cir. 1994) (noting that "bad faith normally connotes an ulterior motive or sinister purpose" but that "[a] losing party may be culpable . . . without having acted with an ulterior motive"; adding that culpable conduct in the civil context "is commonly understood to mean conduct that is 'blameable; censurable; . . . at fault'" and "normally involves something more than simple negligence"). Here, UBH did act with culpability, particularly given its application of the LOC Guidelines to the Bains' claim for benefits; as the Court noted in its prior order, the LOC Guidelines were developed based on financial rather than medical considerations. *See* Docket No. 108 (Order at 19) (referring to Judge Spero's analysis of the LOC Guidelines in *Wit*). Moreover, the *degree* of culpability is not insignificant. The Court applied a significant amount of skepticism in reviewing UBH's benefits determination precisely because of the LOC Guidelines. *Compare Barnes*, 963 F. Supp. 2d at 966-67 (noting that, even if the defendant had "*some* culpability, that does not mean that this factor weighs strongly in [plaintiff's] favor[;] [i]ndeed, the fact that the Court decided to apply only slight skepticism indicates that the degree of culpability is relatively low") (emphasis in original).

On factor (2), UBH admits that it has the ability to satisfy the requested fee award. *See* Opp'n at 6.

On factor (3), it is not dispositive that "the Bains did not prosecute their claims to benefit other plan participants." Opp'n at 6. That fact does not mean that a fee award would not have a deterrent effect. In fact, given that the LOC Guidelines represent a conflict of interest, a fee award here would likely deter others from acting under similar circumstances. *Compare Barnes*, 963 F. Supp. 2d at 967 ("conclud[ing] that the Defendant Plan has acted at best with a low degree of culpability, [so that] an award of fees would likely have a small deterrent effect").

On factor (4), the Bains concede that they did not seek to benefit all participants and beneficiaries of an ERISA plan.

6

1          Finally, on factor (5), the relative merits of the parties' positions have essentially "been addressed above in conjunction with the analysis of 'some degree of success on the merits.'" *Id.* at 968.

           Taking into account all of the above, the factors "sufficiently weigh in favor of an award of fees, although the appropriate amount [may be] subject to dispute." *Id.*; *see also Dimry*, 2018 U.S. Dist. LEXIS 215906, at *5-6 (concluding that "[a]n award here amply satisfies the five *Hummell* factors").

D.     Reasonable Fees

           As to what fee amount should be awarded, UBH argues first for a reduction in fees because "the success [the Bains] obtained was slight, as they did not obtain the [specific] relief they sought [*i.e.*, an outright award of benefits], and the relief they obtained was nothing more than they would [have] received as class members in Wit." Opp'n at 7. While this argument is not without any basis, the Court rejects it. Although the Court did not order benefits to be awarded, that does not mean that the Bains will not get any benefits when UBH reviews the claim on remand. More important, the Bains' efforts here are not duplicative based on *Wit* – at least not at the time they were litigating this case. As indicated above, no relief has been awarded in *Wit* as of yet. Therefore, even if all that the Bains got here was a remand, that relief was not (yet) available to them in *Wit*.

           UBH argues next that, even if the Court does not reduce fees based on a limited success theory, the Court should still reduce fees based on overstaffing and/or excessive billing. (UBH does not challenge the hourly rates.). On overstaffing, UBH notes that there were "three partner-level attorneys working this case in addition to two associates and two paralegals." Opp'n at 7. (One partner works at the Phillips law firm; the other two partners work at the Creitz law firm (which has no associates).) On excessive billing, UBH argues that too much time was spent on, *e.g.*:

- the Bains' motion to stay proceedings (pending *Wit*) – about 50 hours;
- discovery (largely geared at obtaining and reviewing *Wit* documents) – almost 80 hours; and

7

- the cross-motions for judgment – about 60 hours.

*See* Opp'n at 7-8; Creitz Reply Decl., Ex. A (chart estimating hours spent on each major litigation task). UBH contends that the "award should be no more than 20% of the requested fees." Opp'n at 8.

The Court does not agree with all of UBH's criticisms. For example, with respect to the time spent on discovery, the Court acknowledges that the actual *Wit* discovery does not appear to have been critical to this case. Rather, what was critical was Judge Spero's order in *Wit* (in which he found the LOC Guidelines to be contrary to standards of care generally accepted in the field of mental health treatment). However, it was not unreasonable for the Bains to want to get the *Wit* documents and review them as they could impact their case and to keep tabs on what was going on in *Wit*, especially given the parties' ultimate agreement to a stay of proceedings to see what would happen in *Wit*.

On the other hand, some of UBH's criticisms have merit, at least to a certain extent.[2] For example, this case does appear partner heavy in terms of staffing. While two partners could be justified – one from the Phillips law firm and one from the Creitz law firm (the Creitz law firm being the ERISA expert) – that does not explain why a second partner from the Creitz law firm was necessary. This case was not particularly complex or unusual. The Creitz law firm suggests that it cannot be blamed for having only partners and no associates at the firm. That may well be true. But that still does not explain why two partners from the firm were needed on a relatively straightforward case.

As another example, the time spent by the Bains' attorneys on the motion to stay seems excessive. The attorneys indicate that they spent about 50 hours on the motion to stay, but that number of hours is difficult to justify given that the motion itself is only nine pages in length and the reply brief only six pages in length. Also, the opposition brief that needed to be reviewed was only fourteen pages in length. No hearing took place because the parties ultimately stipulated to a stay. The Bains argue that they were successful on the motion, which is true, but that does not

---

[2] In so finding, the Court acknowledges that both the Phillips and Creitz law firms claim to have exercised billing judgment. *See* Carlin Reply Decl. ¶ 2; Creitz Reply Decl. ¶¶ 3, 5.

mean that the time spent on the motion was reasonably necessary. The Bains also argue that "[m]uch of [the] time was spent by Ms. Wald, an associate [at the Phillips firm] who, as part of drafting the motion, familiarized herself with the complex *Wit* action and its potential impact on this case and conducted the research necessary to ensure that the motion was successful." Reply at 5. But while *Wit* may have been complex to litigate, the gist of the lawsuit seems fairly straightforward; counsel did not need to know the ins and outs of the *Wit* case in order to move for a stay.

The Court concludes that the full fee award requested by the Bains is not appropriate but that the 80% discount proposed by UBH is unreasonable. The Court finds that a 10% reduction is proper. *Cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (noting that "the district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation" but, here, "the district court cut the number of hours by 25 percent, and gave no specific explanation as to which fees it thought were duplicative, or why"). Such a reduction takes into consideration the meritorious criticisms made by UBH as well as the fact that the Bains' fee request included an estimated 13 hours of additional work to be incurred after the filing of the opening brief – a number that seems excessive given the scope of the reply as well as the fact that the Court has vacated the hearing on the motion. *See* Carlin Decl. ¶ 12; Creitz Decl. ¶ 18.

The Bains have asked for a total fee award (*i.e.* excluding costs) of $172,624.75. *See* Reply at 6. With a 10% reduction, the fee award is **$155,362.28**.

E. <u>Costs</u>

UBH did not contest costs in its opposition and therefore the costs requested in the opening brief shall be awarded. In reply, the Bains ask for a slightly higher amount in costs because the Clerk of the Court disallowed $347.86 for serving a subpoena and $20 in docket fees. *See* Docket No. 119 (costs taxed). This is a reasonable request and therefore the additional costs shall be awarded. Although the Clerk of the Court disallowed the $20 in docket fees because there was no supporting documentation, 28 U.S.C. § 1923(a) provides that "[a]ttorney's and proctor's docket fees in courts of the United States may be taxed as follows: $20 on trial or final hearing (including

a default judgment . . . ) in civil . . . cases." 28 U.S.C. § 1923(a).

The total costs awarded therefore is **$1,319**.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Bains' motion for fees and costs is granted. More specifically, the Bains are awarded $155,362.28 in attorneys' fees and $1,319 in nontaxable costs.

This order disposes of Docket No. 116.

**IT IS SO ORDERED**.

Dated: March 23, 2020

_____
EDWARD M. CHEN
United States District Judge